**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Shanae Scruggs, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 22-510 |
| v. | : | |
| | : | |
| Philadelphia Housing Authority, *et al.*, | : | |
| Defendants. | : | |

**January 31, 2024**                                                  **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Shanae Scruggs, a former employee of the Philadelphia Housing Authority ("PHA"), sued PHA and several former coworkers and supervisors. Scruggs claims that she was subjected to a hostile work environment, sex discrimination, and retaliation in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"). She alleges that this mistreatment began shortly after she ended a relationship with a former coworker in 2014, and that it persisted through 2021. The defendants now move for summary judgment on all claims, disputing Scruggs' version of events and claiming that significant portions of Scruggs' allegations fall outside of the applicable statute of limitations period. Scruggs has failed to show that a genuine dispute of material facts exists as to any of her claims. Therefore, the defendants are entitled to summary judgment as to all of Scruggs' claims.

**I.    BACKGROUND**

On February 9, 2022, Shanae Scruggs filed a complaint against PHA and seven individual defendants: Wayman Blackstock, Demetrice Johnson, Cedric Spand, Stacey Collins,[1]

---

[1] Because she changed her name after most or all relevant times in this case, Stacey Collins is referred to in most case documents by her maiden name, Stacey Thomas. For simplicity, I refer to her as Stacey Collins throughout this

Blair Green, Ashley Edwards, and Tazzie White. Compl., ECF No. 1. Scruggs alleged violations

of Title VII, the PHRA, and the Philadelphia Fair Practices Ordinance ("PFPO").

Scruggs failed to timely serve Defendants White, Green, and Edwards, and they were

dismissed from the case. Order, ECF No. 12; *see also* Explanation and Order, ECF No. 37. On

May 17, 2022, PHA and the remaining individual defendants moved for partial dismissal of

Scruggs' complaint. Partial Mot. to Dismiss the Compl., ECF No. 4. On August 26, 2022, this

motion was partially granted. Order, ECF No. 19. All Scruggs' PFPO claims were dismissed,

and Defendants Blackstock, Collins, Johnson, and Spand were dismissed from Scruggs' Title VII

claims and PHRA sex discrimination claim. *Id.* On September 22, 2022, non-supervisory

defendants Spand and Johnson moved to dismiss the remaining claims against them. Mot. to

Dismiss the Amended Compl., ECF No. 23. On April 19, 2023, Spand and Johnson were

dismissed as parties. Order, ECF No. 37.

After this motion practice, Scruggs' Title VII and PHRA sex discrimination claims

against PHA remained pending, as did her PHRA retaliation and aiding and abetting claims

against PHA, Blackstock, and Collins (collectively, "Defendants").

On August 25, 2023, Defendants moved for summary judgment on all Scruggs' claims,

attaching deposition transcripts and other record evidence. Mot. for Summ. J., ECF No. 41. On

November 15, 2023, Scruggs responded to Defendants' motion. Resp. to Mot. for Summ. J., ECF

No. 46. Scruggs did not attach exhibits to her motion, nor did she dispute Defendants' factual

allegations or proffered evidence. *Id.*

### A. <u>Defendants' Evidence</u>

Defendants PHA, Blackstock, and Collins submitted 38 exhibits as part of their summary

judgment motion, including PHA policy documents, human resources records, emails, text

opinion.

messages, sworn affidavits, and Scruggs' deposition transcript.[2] Appendix, ECF No. 41-3, at 1–3. The Defendants allege the following facts in their motion for summary judgment:

PHA hired Scruggs in 2012 as a property manager. Defendants' Statement of Undisputed Material Facts ("SUMF"), ECF No. 41-2 ¶¶ 1–2. While in that position, Scruggs was disciplined twice for performance issues, once in 2013 and once in 2014. SUMF at ¶ 28. Sometime in 2014 she met Wayman Blackstock, who worked for PHA in its Housing Choice Voucher program ("HCV"). Report of Investigation, ECF No. 41-3, Ex. 11, at 3. Blackstock stated that he gave Scruggs' resume to Yorkman, the head of HCV at that time. Report of Investigation at 6. In January 2015, Scruggs transferred and began working in the Owner Services office of HCV. SUMF at ¶ 30, 38.

From about February until about April 2015, Scruggs was romantically involved with Blackstock. SUMF at ¶ 37. Scruggs has little recollection of the details of this relationship, including how or why the relationship ended. Scruggs Deposition Transcript ("Scruggs Deposition"), ECF No. 41-3, Ex. 38, at 79.[3]

The next year, in January 2016, Blackstock was appointed as Acting Director of Owner Services, the office where Scruggs worked. SUMF at ¶¶ 43–44. Scruggs' direct supervisor was Ashley Edwards, and she did not report directly to Blackstock. SUMF at ¶ 35.

On December 1, 2016, Scruggs was disciplined by supervisor Brett Holden in the form of an informal counseling for failing to timely respond to property owners about rent increase requests. SUMF at ¶ 48. On December 2, 2016, Scruggs made a formal complaint to PHA's

---

[2] Scruggs does not dispute Defendants' factual allegations, except by disputing them "as stated" or denying the statements without alleging additional facts. "[A] party resisting the [summary judgment] motion cannot expect to rely merely upon bare assertions, conclusory allegations, or suspicions." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). Except where otherwise marked, I accept defendants' Statement of Undisputed Material Facts as true but view them in the light most favorable to Scruggs.

[3] Scruggs' deposition transcript begins at page 282 of Defendants' exhibits in ECF No. 41-3. The transcript itself is also paginated. When referring to Scruggs' deposition transcript and other exhibits attached to Defendants' motion for summary judgment, I use the page numbers in the exhibits themselves, not the ECF pagination.

Human Resources Department ("HR"), alleging a hostile work environment, harassment, and bullying by Edwards and Blackstock. SUMF at ¶ 51. Stacey Collins, then a Senior Labor Relations Specialist for PHA, met with Scruggs in relation to this complaint. Report of Investigation at 2. Scruggs reported that, once Blackstock became her supervisor, he antagonized her due to their relationship that had ended nine months earlier. SUMF at ¶ 55. She asserted that he tried to discipline her and give her a heavy workload in an attempt to get her fired. *Id.* In her interview with HR, Scruggs stated that Blackstock had persuaded her to start a sexual relationship, and that since they separated he had given her "busy work" and laughed at her. Report of Investigation at 2–3. Scruggs also claimed that her supervisor Ashely Edwards was pregnant with Blackstock's child. SUMF at ¶ 56. Scruggs is now unable to recall the facts underlying this complaint. Scruggs Deposition at 103–104 ("Q: [S]itting here today . . . you don't independently remember it? A: Yes").

PHA investigated Scruggs' allegations and conducted interviews with several staff members in Scruggs' department. *See* Report of Investigation at 2–7. Scruggs was placed on paid leave during PHA's investigation of her complaint. SUMF at ¶ 52. At the end of the investigation, PHA found that Scruggs lied to HR during the investigation and that her claims were unfounded. SUMF at ¶¶ 60, 64–66. The investigator recommended that Blackstock and Scruggs be removed from the same reporting chain. Report of Investigation at 11. On February 13, 2017, Scruggs was reassigned to another department and no longer interacted with Blackstock or Edwards. SUMF at ¶ 11; February 13, 2017 Memorandum, ECF No. 41-3, Ex. 12, at 1.

In 2018, Scruggs filed another complaint with PHA's HR department, this time alleging a hostile work environment, harassment, and bullying by her director Tazzie White. SUMF at ¶¶

72, 80. PHA's internal investigation did not find that Scruggs' complaint was well-founded. September/October 2018 Memorandum, ECF No. 41-3, Ex. 13, at 2; SUMF at ¶¶ 87–89.

Scruggs again complained in February 2019, this time against her direct supervisor, Blair Green. SUMF at ¶¶ 90–92. Stacey Collins, then the Acting Manager of Labor and Employee Relations at PHA, processed this complaint. March 5, 2019 Memorandum, ECF No. 41-3, Ex. 15, at 1. Scruggs alleged a hostile work environment and alleged that Green had called her by the wrong name multiple times. *Id.* Scruggs now does not recall all the specifics of this complaint. During her deposition, she was asked about what made PHA a hostile work environment, and she responded, "I can't remember. It was a while ago. So the events are all over, you know. But there was a time when people that I had previously spoken to stopped speaking to me." Scruggs Deposition at 138. While she recalls that she was called by the wrong name in a meeting, she does not remember what name she was called, whether Green apologized or who else was present in the meeting. Scruggs Deposition at 132–35. PHA's internal investigation of the complaint determined that Scruggs' complaint was unfounded but revealed that Scruggs had sent Green a text message containing a homophobic slur. SUMF at ¶¶ 96–100. Scruggs was suspended for five days due to her use of the slur. SUMF at ¶¶ 101, 102.

In March 2019, Scruggs received informal counseling for problems with her work performance and was placed on an improvement plan. SUMF at ¶¶ 103, 106. Two months later, Scruggs was suspended for one day for her failure to adhere to the improvement plan. SUMF ¶ 107, 108. After receiving this suspension, Scruggs filed two complaints: one on May 17, 2019 with the Pennsylvania Human Relations Commission ("PHRC"), and one with HR. SUMF at ¶¶ 109, 110; PHRC Complaint, ECF No. 41-3, Ex. 20. Scruggs alleged that her suspension amounted to harassment, discrimination, and retaliation by Green and White. SUMF at ¶ 112.

Once again, PHA investigated and determined that there was insufficient evidence to show that other employees violated PHA policies. SUMF at ¶ 117; August 5, 2019 Memorandum, ECF No. 41-3, Ex. 21, at 2.

In October 2019, Scruggs transferred to PHA's Construction/Capital Projects Department and no longer communicated with her coworkers and supervisors in her former department. SUMF at ¶¶ 125, 126; Scruggs Deposition at 229. In this new role, Scruggs reported to J. Ryan Wachter, and she worked with coworkers Cedric Spand and Demetrius Johnson. SUMF at ¶¶ 121, 146–47. Scruggs raised informal concerns to her supervisor about Spand and Johnson being noisy and mistreating her at work. SUMF at ¶¶ 145, 151, 157.

In August 2020, after several months of logging her performance issues, Scruggs' supervisor issued her a written warning. SUMF at ¶¶ 131–43. She was invited to change work locations so that she could avoid interacting with these coworkers, which she declined to do. SUMF at ¶¶ 157, 158. Scruggs and her coworkers continued to have negative interactions. SUMF at ¶ 159. Scruggs alleged that Johnson nearly walked into her and blocked a doorway; Johnson claimed that Scruggs nearly bumped into him. SUMF at ¶¶ 160–62.

On March 11, 2021, Scruggs contacted Stacey Collins in HR with her complaints about Johnson's behavior. SUMF at ¶¶ 164, 167; Declaration of Stacey Collins, ECF No. 43-1, Ex. 34, at ¶ 49. Scruggs complained that Johnson had tried to bump into her, tried to trip her, and placed a cart in front of the bathroom door. Declaration of Stacey Collins at ¶ 49.

On March 15, 2021, Scruggs took a day off work. SUMF at ¶ 179. That day, Moore, Scruggs' great-grandmother, went to a PHA worksite. She apparently asked after Spand, located Johnson, and told Johnson that her grandsons would be stopping by because her family did not tolerate bullying. SUMF at ¶¶ 185–88. Johnson and Spand interpreted this visit as a threat and

6

notified Stacey Collins in HR. SUMF at ¶ 191; Declaration of Stacey Collins at ¶ 63. Spand added that Scruggs had previously told him that her family members would fight on her behalf. SUMF at ¶ 192.

On March 17, 2021, Scruggs followed up on her complaint to Collins, adding a list of her allegations against Spand and Johnson:

- At an unknown time, Mr. Johnson made a comment to Ms. Scruggs about her not speaking to him and told her that he would not speak to her.

- In December of 2020, Mr. Johnson broke Ms. Scruggs' Christmas tree in the office.

- At an unknown time, Mr. Johnson placed a cart in front of the ladies bathroom while Ms. Scruggs was inside and she nearly fell trying to move the cart to leave the bathroom.

- At an unknown time, Mr. Johnson attempted to trip and/or cut off Ms. Scruggs while walking in the hallway, which Ms. Scruggs avoided by stopping.

- At an unknown time, Mr. Johnson called Ms. Scruggs an ignorant bitch.

- At an unknown time, Mr. Spand called Ms. Scruggs a fucking bitch.

- At an unknown time, Mr. Johnson followed Ms. Scruggs to the bathroom.

- At an unknown time, Mr. Johnson would walk by Ms. Scruggs' office and say things like "you about to lose your job" to Ms. Scruggs.

- At an unknown time, when Ms. Scruggs was talking to her mother and sister telling them about a date she had that night, Mr. Johnson made a comment to Ms. Scruggs saying "yeah, because you know she gotta go on her dates."

- At an unknown time, Mr. Spand criticized Ms. Scruggs when she was watching

Mr. Johnson argue with another laborer on the worksite.

- On a daily basis, Mr. Johnson would bang, throw, and handle materials aggressively, which would startle Ms. Scruggs.

- At some point in early March 2021, Mr. Johnson threw a Red Bull can at Ms. Scruggs.

- On March 9, 2021, Ms. Scruggs said Mr. Johnson almost bumped into her in the hallway, but she avoided a collision by swinging her right shoulder.

- On March 10, 2021, Mr. Johnson put a chair outside of Ms. Scruggs' office to allegedly listen to her.

- At 11 am on March 11, 2021, Mr. Johnson made a comment near Ms. Scruggs' office saying "Oh she can't fight, she from the suburbs."

- On March 11, 2021, after Ms. Scruggs had complained to Ms. Collins in HR at around 11:45 am, Mr. Johnson was outside Ms. Scruggs' office making noise, slamming things, and on the phone talking loudly at around 12:43 pm.

- On March 17, 2021, Mr. Johnson tried to block Ms. Scruggs from using a door.

SUMF at ¶ 170. Johnson and Spand denied using abusive language, and an internal investigation found that Scruggs' complaint was unfounded. SUMF at ¶¶ 176, 178.

On March 24, 2021, PHA, through Collins and Joshua McQuoid (PHA's Acting Assistant Vice President of HR), terminated Scruggs. SUMF at ¶ 200. In the Notice of Termination, they cited as reasons her great-grandmother's threats and Scruggs' own repeated disciplinary issues. *Id.*

### B. **Scruggs' Evidence**

Scruggs did not attach exhibits to her summary judgment motion, and she apparently did

not conduct any depositions. Mot. for Summ. J., ECF No. 41, at 2. However, Scruggs' own deposition by Defendants contains some of her allegations regarding PHA and the individuals named in her complaint.

In her complaint, Scruggs alleges that she and Blackstock began a romantic relationship in 2014, and that she ended the relationship a few months later. Compl., ECF No. 1 ¶ 24. Scruggs now does not recall how she met Blackstock, how and when their relationship moved past friendship, or why the relationship ended. Scruggs Deposition at 69, 71, 72. She states that after the relationship ended, she no longer spoke to him, but he tried to talk to her. *Id.* at 77. She also alleges that he pinched her butt at some point. *Id.*

After Blackstock was promoted to a position two levels above Scruggs, she alleges that he gave her excessive work assignments. Scruggs Deposition at 85, 96. She states that she was expected to complete this work without sufficient training. *Id.* at 99. Scruggs recounts that Blackstock and Edwards "made it very clear that they were going to make [her] uncomfortable because of [their] past." *Id.* at 89. Blackstock apparently gave Scruggs "side eye" when she left her desk to go to the restroom. *Id.* at 100. He also allegedly cleared his throat when other employees would stop by Scruggs' desk. *Id.* at 109. Scruggs does not recall whether she raised her concerns about the work environment to anyone at PHA. *Id.* at 96. Later, after Scruggs left the department, she states that Blackstock and Edward would stare at her or "be smart" with her. *Id.* at 169.

After Scruggs transferred to another department, she alleges that her new director Tazzie White treated her differently from how she treated Scruggs' coworkers. *Id.* at 126. Scruggs alleges that White paid extra attention to her work. *Id.* at 124. Scruggs states that she became aware that she was being treated differently after she had conversations with coworkers about

their work. *Id.* at 126.

Scruggs' direct supervisor, working under Tazzie White, was Blair Green. SUMF at ¶ 81. She claims that Green used a different tone with her from the tone he used with her coworkers. *Id.* at 136. Scruggs also alleges that Green called her by the wrong name in front of coworkers. Scruggs Deposition at 132. Scruggs does not recall what the incorrect name or names were, or how she or Green reacted at the time. *Id.* at 133–34. Scruggs alleges being called a pessimist by a supervisor during this time, but she does not recall the surrounding circumstances. *Id.* at 166. Scruggs states that Green at some point snatched folders from her and rolled his eyes at her. *Id.* 176. Scruggs does not remember the details of the discipline against her during this time, including whether she complied with her performance improvement plan. *Id.* at 154–59.

Scruggs then transferred to another work location, where she began working with coworkers Spand and Johnson. SUMF at ¶¶ 146–47. In her complaint, Scruggs alleges that Spand and Johnson verbally berated her and otherwise harassed her. Compl. at ¶¶ 69–73. Scruggs recalls in her deposition that Johnson tried to offer her alcohol during work hours. Scruggs Deposition at 198. She also suspects that Johnson placed a cart in front of the women's bathroom, causing her to nearly trip. *Id.* at 199. Scruggs alleges that Spand and Johnson called her "bitch" on multiple occasions. *Id.* at 199–200. Johnson also apparently threw a Red Bull energy drink at her and, on another occasion, tried to block Scruggs from going out a door. *Id.* at 210.

Scruggs complained about Spand and Johnson's conduct, and she was terminated later the same month. SUMF at ¶¶ 167, 168, 200. Scruggs confirms in her deposition that she was not present when her great-grandmother went to Scruggs' worksite and allegedly threatened her coworkers. Scruggs Deposition at 227. Scruggs states that she deleted the text messages her

great-grandmother sent her about her visit to the worksite. *Id.* at 206.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The party opposing summary judgment does not have a duty to present evidence. 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2727.2 (4th ed. 2023) (collecting cases). If the movant's own evidence demonstrates a genuine issue of material fact, fails to carry its burden, or raises credibility concerns, even an unopposed motion for summary judgment may be denied. *Id*; *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 171, 174–76 (3d Cir. 1990) (holding that an unopposed summary judgment motion will not necessarily be granted). Where, as here, the moving party does not have the burden of proof on the relevant issues, the court "must determine that the deficiencies in

the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Associates*, 922 F.2d at 175 (citing *Celotex Corp.*, 477 U.S. 317). If the facts alleged by the movant are not disputed, the Court *may* grant summary judgment "if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In ruling on a motion for summary judgment, the Court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The only evidence that was submitted to the Court was attached to Defendants' summary judgment motion. I will therefore examine these facts in the light most favorable to Scruggs and credit the allegations she makes in her deposition testimony.

## III.   DISCUSSION

Scruggs brings several gender discrimination claims under Title VII, which include a disparate treatment claim, a hostile work environment claim, a sexual harassment claim, and a "cat's paw" liability claim. Scruggs further alleges retaliation under Title VII. Scruggs also brings PHRA gender discrimination and retaliation claims against PHA, and she claims that Blackstock and Collins violated the PHRA by aiding and abetting PHA's alleged discriminatory and retaliatory conduct. Defendants contest these claims, citing a lack of evidence and procedural issues including waiver and the statute of limitations.

### A.   <u>Statute of Limitations</u>

In their motion for summary judgment, Defendants argue that Scruggs' claims involving Blackstock are barred by the statute of limitations. *See* Mem. in Supp. of Mot. for Summ. J., ECF No. 41-1, at 6–10. Scruggs counters that Defendants waived this defense by failing to plead it in their answer to her complaint. Mem. in Supp. of Resp. to Mot. for Summ. J., ECF No. 46-1, at

10.

Affirmative defenses, including a statute of limitations defense, in general must be pleaded in the answer to the complaint or waived. Fed. R. Civ. P. 12(b). In the Third Circuit, a limitations defense may also be made by a motion to dismiss if such a defense is apparent on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (explaining and providing context for the "Third Circuit Rule"). A limitations defense does not necessarily have to be raised in the answer (or a motion to dismiss), but it cannot be raised at any time. *Id.* Defendants must assert a limitations defense "as early as reasonably possible." *Id.*, 313 F.3d at 136 (collecting cases). This requirement serves two goals: avoiding prejudice and promoting judicial economy. *Id.*, 313 F.3d at 137. If there is no prejudice to the plaintiff, an affirmative defense can be raised at any time. *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 506 (3d Cir. 2006) (citing *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir. 1991)).

For instance, if codefendants plead a statute of limitations defense in their answer, a plaintiff is reasonably on notice of the defense and is not prejudiced. *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d at 506. However, where the defense is not raised until the reply brief of a motion for summary judgment, or is raised for the first time years into litigation, courts have found that the prejudice to the plaintiff is sufficient to bar late pleading of a statute of limitations defense. *See Robinson*, 313 F.3d at 136 (citing *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997) (disallowing statute of limitations defense that was first raised in reply memorandum in support of summary judgment motion, after exhaustive discovery, a month before trial was scheduled)); *Robinson*, 313 F.3d at 136 (citing *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1295 (6th Cir. 1974) (30-month delay in raising statute of limitations defense constituted waiver)).

Here, Defendants had three opportunities since litigation began in February 2022 to raise

a statute of limitations defense. First, on May 17, 2022, Defendants failed to argue this defense in their motion to dismiss Scruggs' complaint. Mot. to Dismiss Compl., ECF No. 4. On September 22, 2022, Defendants did not include this defense in their answer to Scruggs' amended complaint, despite raising several other affirmative defenses. Answer to Amended Compl., ECF No. 22. Finally, during a months-long delay in litigation due to Scruggs' attorney's illness, Defendants did not move to amend their responsive pleading to include a statute of limitations argument.

Allowing a statute of limitations defense at this late stage in the case would prejudice Scruggs. Scruggs' case theory throughout this litigation has rested in large part on a nexus between Blackstock's alleged animus against Scruggs and PHA's actions. It is plausible that Scruggs' strategy would have shifted were she aware that Blackstock's claims may be subject to this affirmative defense. Defendants raise this defense now for the first time, after substantive briefing at the motion to dismiss stage and after the close of discovery.

While it is uncontested that Scruggs and Blackstock no longer had contact after Scruggs' October 18, 2019 transfer to another department, the defendants have waived their statute of limitations defense. SUMF at ¶¶ 120, 125, 126; Resp. to Defs.' Statement of Undisputed Material Facts, ECF No. 46-2, at ¶¶ 120, 125, 126. I will accordingly consider all relevant allegations—even if they would otherwise be untimely—in evaluating Scruggs' claims against Blackstock.

**B.  <u>Title VII Sex Discrimination Claims</u>**

Scruggs brings sex discrimination claims against PHA in her complaint, under Title VII (including 29 C.F.R § 1604.11) and the PHRA. Amended Compl., ECF No. 20. She alleges disparate treatment, a hostile work environment, sexual harassment, and "cat's paw" liability.

None of these claims will proceed.

### 1. Disparate Treatment Claim

Scruggs brings a Title VII claim alleging that she was treated differently by PHA based on her sex. Amended Compl. at ¶¶ 89–102. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff presents only circumstantial evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). "In *McDonnell Douglas*, the Supreme Court created a special scheme for structuring the presentation of evidence in discriminatory treatment cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).

The *McDonnell Douglas* burden-shifting analysis proceeds in three steps. *Keller*, 130 F.3d at 1108. First, the plaintiff must establish a prima facie case of discrimination. *Id*. If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones*, 198 F.3d at 410. While the burden of production shifts at each step of the *McDonnell Douglas* analysis, the plaintiff bears the burden of persuasion at all times. *Smith v.*

*City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009).

In order to establish a prima facie case of disparate treatment, a plaintiff must establish that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). PHA concedes that Scruggs is a woman and that her termination constitutes an adverse employment action. Mot. for Summ. J. at 19 n.5. However, PHA does not concede that Scruggs was qualified for the position she occupied, or that the circumstances of her termination could give rise to an inference of intentional discrimination. *Id.* Scruggs bears the burden of establishing these two prongs. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). If Scruggs cannot present specific, admissible, and credible evidence supporting each element, the claim cannot proceed. *See Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). This is a low burden; it is not intended to be a "rigid formula." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2s 341, 347 (3d Cir. 1990).

Scruggs fails to establish a nexus between sex discrimination and her termination. The circumstances of Scruggs' termination do not give rise to an inference of discrimination. Scruggs does not identify appropriate comparators or substantiate her allegations that a male PHA employee would have been treated differently. She does not cite witness affidavits or depositions, and she does not attach any exhibits in support of her allegations. In Scruggs' own deposition, she testifies that she deleted the text messages her great-grandmother sent her when she visited the worksite. She does not state why she believes PHA's termination decision to be based on her sex.

Scruggs insinuates that her transfer to another department to remove her from

16

Blackstock's supervision supports a prima facie case of discrimination. Mem. in Supp. of Resp. to Mot. for Summ. J. at 7. The United States Supreme Court is currently considering the question of whether a discriminatory transfer decision can constitute an adverse employment action under Title VII, absent a court determination that the transfer decision caused significant disadvantage. *Muldrow v. City of St. Louis, Mo.*, Case No. 22-193, 143 S. Ct. 2686 (Mem.) (June 30, 2023) (granting certiorari). Even when viewed in the light most favorable to Scruggs, the evidence shows that Blackstock recommended Scruggs for her position prior to beginning a romantic relationship with her, and that he supervised her after the relationship was over. This does not appear to violate PHA's policies. 2016 Employee Handbook, ECF No. 41-3, Ex. 3, at 22. Scruggs raised her concerns about working with Blackstock, and then she was moved to another department. Scruggs has not presented sufficient evidence to raise an inference that this transfer was discriminatory.

Finally, other circumstances of Scruggs' employment do not constitute adverse employment actions for the purposes of a prima facie case of sex discrimination. Scruggs alleges that her desk was moved closer to Blackstock's, and that she was later given a paid suspension during the investigation of her allegations against Blackstock. Neither of these constitutes an adverse employment action. *See Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 52 323, 328 (3d Cir. 2015) (holding that a paid suspension while an employee was investigated for 53 alleged misconduct was not a tangible employment action); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 744 (1998) (holding that a tangible employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). The other employment actions taken against Scruggs, including her later suspension when a PHA

investigation found that she used a homophobic slur against a coworker, fail to raise an inference that her sex was a motivating factor.

PHA's summary judgment motion will be granted on Scruggs' adverse-action sex discrimination claim.

### 2.   Hostile Work Environment Claim

To succeed on a hostile work environment claim under Title VII, Scruggs must establish: "1) [she] suffered intentional discrimination because of [her] sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected [her], 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citations omitted). Defendants allege that Scruggs cannot show prongs (1), (2) or (4), and that she has waived this claim by failing to mention it in her opposition to Defendants' motion for summary judgment. Mem. in Supp. of Mot. for Summ. J. at 10; Defs.' Reply Br., ECF No. 48, at 9.

The party moving for summary judgment has the initial burden to show "an absence of evidence to support the nonmoving party's case." *UPMC Health Sys. V. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). Then, the party bearing the ultimate burden of proof must "by affidavits or by the depositions and admissions on file 'make a showing sufficient to establish the existence of [every] element essential to that party's case.'" *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988) (citation omitted). If the facts alleged by the movant are not disputed, the Court *may* grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Here, Defendants moved for summary judgment on Scruggs' hostile work environment

claim, and Scruggs did not address these arguments in her response. *See* Mem. in Supp. of Mot. for Summ. J. at 5–10; *see generally* Mem. in Supp. of Resp. to Mot. for Summ. J. I therefore examine whether Defendants met their initial burden to show an absence of evidence to support any prong of this claim.

Defendants cannot meet their burden to disprove that at least some of Scruggs' alleged harassment was based on sex. Blackstock allegedly pinching Scruggs' butt satisfies this prong of Scruggs' prima facie case. The but-for element of showing that harassment is based on sex is satisfied where the alleged conduct is sexual or sexist in nature. *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (citing *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 454 (N.J. 1993)).

Defendants next must show an absence of evidence that Scruggs' alleged harassment was "severe or pervasive." This is a totality of the circumstances inquiry, in which a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel*, 706 F.3d at 168 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "'[O]ffhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citation omitted). Title VII is not designed to be a "general civility code," and is not intended to cover "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). All alleged incidents must be considered as a whole, not as individual incidents. *Mandel*, 706 F.3d at 168.

Between Scruggs' complaint, Scruggs' deposition, and the exhibits attached to

Defendants' motion for summary judgment, the following incidents between 2015 and 2021 could be construed as discriminatory conduct: Scruggs receiving heavier workloads than other employees, Blackstock pinching Scruggs' butt, Scruggs being called the wrong name, Scruggs being called "bitch," other employees nearly harming Scruggs (she reports that she was almost hit by a can, she nearly tripped, and someone almost bumped into her), and other employees and supervisors directing disparaging comments and dirty looks at Scruggs.

Blackstock pinching Scruggs is the most serious allegation, and the one most clearly linked to her sex. Single incidents can be sufficient to make a prima facie case of a hostile work environment. *See, e.g., Castleberry v. STI Group*, 863 F.3d 259, 265 (3d Cir. 2017) (allowing case to go forward with single allegation of a supervisor using a racial slur and threatening termination). However, "[b]are assertions" or "vague statements" of evidence underpinning a plaintiff's hostile work environment claim are insufficient, by themselves, to allow the claim to survive summary judgment. *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023). Plaintiffs "must set forth specific facts" establishing a genuine issue in order for their claims to proceed. *Id.* (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018)). Scruggs states in her deposition that, at some point after the end of her relationship with Blackstock, "he kind of like pinched my butt." Scruggs Deposition at 70. She was unable to recall an approximate month or year of his conduct. *Id.* She did not specify whether this conduct took place when Blackstock was a supervisor. Her complaint and interview with HR in 2016 relating to her allegations against Blackstock did not include any mention of this incident. Report of Investigation at 1–3. While such an incident, particularly if directed by a supervisor at a lower-level employee, would be a serious discriminatory act, Scruggs fails to present more than a "scintilla" of evidence that would allow this incident to establish her prima facie case of a hostile

work environment. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 365 (3d Cir. 2001) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

The remainder of the incidents Scruggs reports are spread over six years and three separate departments. Scruggs is unable to cite specific details regarding most of these incidents. Scruggs does not substantiate her claim that she was given different or more intense workloads than other employees. Scruggs' allegation that her coworkers disparaged her is also called into question or complicated by the allegations against her for refusing to speak to one of her coworkers and referring to another with a homophobic slur. She does not present deposition testimony or affidavits from any other PHA employees to corroborate her claims. Viewing this limited evidence in the light most favorable to Scruggs, these reported incidents are "obnoxious, unprofessional, and inappropriate," but they are not the type of severe and "physically threatening or humiliating [acts]" that, even when taken together, can constitute a hostile work environment. *See Nitkin*, 67 F.4th at 571–72 (quoting *Harris*, 510 U.S. at 23).

Scruggs does not respond to Defendants' arguments in her summary judgment motion, and she did not provide evidence of discriminatory actions beyond vague allegations. Considering the totality of Scruggs' allegations of harassment throughout her work at PHA, I find that she is unable to make a prima facie case of severe or pervasive discrimination on the basis of sex.

Because PHA has carried its burden to show a lack of evidence on at least one prong of Scruggs' claim of a hostile work environment, summary judgment will be granted as to this claim.

### 3.  Sexual Harassment Claim

Scruggs brings a cause of action under 29 C.F.R. § 1604.11, which prohibits sexual

harassment in the workplace. Amended Compl. at ¶¶ 103–111. Specifically, this regulation states the following:

> (a) Harassment on the basis of sex is a violation of section 703 of title VII.
> Unwelcome sexual advances, requests for sexual favors, and other verbal or
> physical conduct of a sexual nature constitute sexual harassment when
>
> > (1) submission to such conduct is made either explicitly or implicitly a
> > term or condition of an individual's employment,
> >
> > (2) submission to or rejection of such conduct by an individual is used as
> > the basis for employment decisions affecting such individual, or
> >
> > (3) such conduct has the purpose or effect of unreasonably interfering with
> > an individual's work performance or creating an intimidating, hostile, or
> > offensive working environment.

29 C.F.R. § 1604.11. Having separately pled a hostile work environment claim, I understand Scruggs to be alleging "quid pro quo" sexual harassment by citing this regulation.

To make a claim of "quid pro quo" sexual harassment, the Third Circuit requires a plaintiff to show prong (2) of the regulation: that her submission to a supervisor's harassing conduct was an express or implied condition for receiving a job benefit or avoiding a job detriment. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997) (adopting regulatory language in "quid pro quo" sex discrimination claim). The only sexual advances Scruggs alleges were from Blackstock, and she does not claim that any of these occurred while he was in a supervisory position. She does not point to evidence that would show she was required to submit to harassing conduct in order to retain her job or receive promotions. Lacking such evidence, Scruggs cannot make out a "quid pro quo" sexual harassment claim.

### 4. "Cat's Paw" Liability Claim

Scruggs alleges that PHA is liable under a "cat's paw" theory of liability. Mem. in Supp. of Resp. to Mot. for Summ. J. at 8. Under this theory, "an employer may be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse employment action at issue in the case." *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015) (citing *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011)).[4] "To establish a causal relationship between the actions of a subordinate and the employment decision plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged" that is not "remote, purely contingent, or indirect." *Afrasiabipour v. Pa. Dep't of Transportation*, 469 F. Supp. 3d 372, 387 (E.D. Pa. 2020) (quoting *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015)).

Scruggs does not specify which disciplinary proceedings or performance reviews she alleges to be biased. She does not bring forward evidence that her supervisors' evaluations of her work were biased, and that higher-level decisionmakers then relied on those biased evaluations in making their employment decisions. While it is imaginable that the reports of her great-grandmother's visit were exaggerated or skewed by bias, mere speculation is insufficient to make a prima facie case of discrimination. Therefore, Scruggs' claim that PHA is liable under a "cat's paw" theory will not survive past summary judgment.

Scruggs has not pointed to sufficient admissible evidence to make out prima facie cases of disparate treatment, hostile work environment, "quid pro quo," or "cat's paw" sex

---

[4] Some tension exists between the *McDonnell Douglas* analysis and the "cat's paw" theory; in some cases, "cat's paw" liability is examined a part of the third step of the burden-shifting framework; in others it is examined outside of the framework altogether. *See Afrasiabipour v. Pa. Dep't of Transportation*, 469 F. Supp. 3d 372, 386–87 (E.D. Pa. 2020) (collecting cases applying the "cat's paw" theory in different contexts).

discrimination. There is no genuine dispute of material fact as to these claims, so PHA's summary judgment motion will be granted on Scruggs' Title VII discrimination claims. .

### C. Title VII Retaliation Claim

Scruggs alleges that her firing was retaliatory in violation of Title VII. Amended Compl. at ¶ 126. Retaliation claims are assessed under the *McDonnell Douglas* burden-shifting framework. *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 300 (3d Cir. 2007). To establish a prima facie case of retaliation under Title VII, Scruggs must show: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Engaging in "protected activity" includes opposing activity a plaintiff reasonably believes is unlawful under Title VII. *Moore*, 461 F.3d at 341. The complaint must be "about the type of conduct that is generally protected by that Title, such as discrimination on the basis of race." *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021). "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citation omitted). Scruggs appears to have engaged in protected conduct on up to three occasions: Dec. 2, 2016 (her complaint about mistreatment by Blackstock); May 17, 2019 (her Pennsylvania Human Rights Commission complaint); and March 17, 2021 (her complaint regarding the actions of her coworkers Spand and Johnson). Scruggs' other complaints do not state or insinuate that she is alleging discrimination based on a protected category.

Temporal proximity between protected conduct and an adverse employment action is one

way to create an inference of retaliatory animus. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (analyzing circumstances in which temporal proximity is "unusually suggestive" of retaliation). An employee cannot insulate themselves from adverse actions by raising claims of discrimination *after* engaging in non-protected conduct that was the basis for the employer's adverse action. *Curay-Cramer*, 450 F.3d at 137.

None of Scruggs' allegations were closely followed by an adverse employment action in a way that raises an inference of retaliatory animus. First, on December 2, 2016, Scruggs complained to PHA HR about Blackstock's alleged harassment and mistreatment of Scruggs. After an investigation into these allegations, PHA found that Scruggs had lied during the investigation and she was transferred to another department. Scruggs has failed to show that this transfer was based on discriminatory motives. *See supra*, Part III.B.1. PHA's explanation that they sought to take Scruggs out of Blackstock's direct reporting chain constitutes a legitimate, nondiscriminatory reason for her transfer. Scruggs does cite any evidence to rebut this explanation as pretextual. Next, on May 17, 2019, Scruggs filed a PHRC complaint and alleged discrimination. She voluntarily transferred to another department several months later, and she received a written warning over a year later from a different supervisor. Scruggs does not cite any retaliatory act occurring in the year following this complaint. Finally, on March 11, 2021, Scruggs complained to PHA HR, alleging that her coworkers were behaving inappropriately but not alleging any form of discrimination. On March 15, Scruggs' great-grandmother came to the worksite and allegedly threatened her coworkers. On March 17, Scruggs supplemented her complaint, this time alleging that her coworkers called her a "bitch" and that there was an object placed outside the women's restroom that blocked her path. On March 24, she was terminated due to her great-grandmother's actions. Even though Scruggs engaged in arguably protected

activity shortly after her great-grandmother's visit, this after-the-fact complaint cannot serve to insulate her from her later termination.

Scruggs does not introduce additional facts or evidence that would draw an inference of retaliation between any of her protected activities and the adverse actions she experienced at work. Even if she could make a prima facie case of retaliation, PHA's explanations for the adverse actions taken against her appear sufficient to explain their reasoning, and Scruggs does not substantiate any allegations that PHA's reasons were pretextual.

Scruggs has failed to raise an inference that would fulfill prong (3) and show a casual connection between protected conduct and an adverse employment action. PHA's summary judgment motion will be granted on Scruggs' Title VII retaliation claim .

## D. **PHRA Claims**

Scruggs' Title VII claims are only brought against PHA, but her PHRA claims are also against two individuals: Blackstock and Collins.[5] Summary judgment will be granted as to Scruggs' PHRA claims.

### 1.  **PHRA Claims Against PHA**

Sex discrimination claims under the PHRA are interpreted in the same way as Title VII claims. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 n.8 (3d Cir. 2016) ("The analysis required for adjudicating [plaintiff's discrimination] claim under PHRA is identical to a Title VII inquiry, and we therefore do not need to separately address her claim under the PHRA.") (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)). Therefore,

---

[5] Liability may be imposed under the PHRA on "any person, employer, employment agency, labor organization or employe" who aids or abets any "unlawful discriminatory practice." 43 Penn. Cons. Stat. § 955(e). Courts have limited individual liability under § 955(e) to "supervisory employees." *Rosh v. Gold Standard Café at Penn, Inc.*, No. 16-1676, 2016 WL 7375014, at *7 (E.D. Pa. Dec. 19, 2016).

Scruggs' PHRA discrimination claims against PHA will not proceed.

Likewise, PHRA retaliation claims are interpreted in the same way as Title VII retaliation claims. *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 300 (3d Cir. 2007). Because Scruggs fails to make out a prima facie case of Title VII retaliation, her analogous PHRA retaliation claim against PHA fails.

### 2. PHRA Aiding and Abetting Claims

Scruggs brings PHRA aiding and abetting claims against PHA, Blackstock, and Scruggs. Amended Compl. at ¶¶ 133–140. Defendants argue that Scruggs has waived these claims by failing to respond to them in her opposition to Defendants' summary judgment motion. Defs.' Reply Br. At 11.

First, PHA itself is not a proper defendant for aiding and abetting liability. An employer, like PHA, "cannot aid and abet its own unlawful conduct." *Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227, 239 (E.D. Pa. 2019); *see also Brzozowski v. Penn. Turnpike Comm'n*, 165 F. Supp. 3d 251, 262–63 (E.D. Pa. 2016) (stating that aiding and abetting liability under the PHRA extends only to supervisory employees in their individual capacities); *Thomas v. St. Mary Medical Ctr.*, 22 F. Supp. 3d 459, 476 (E.D. Pa. 2014) (specifying that aiding and abetting liability only applies to individual supervisors). Scruggs' aiding and abetting claim against PHA itself lacks merit, and summary judgment will be granted as to that claim.

The only remaining claims to assess are Scruggs' PHRA aiding and abetting claims against Blackstock and Collins. Aiding and abetting liability can only be imposed on individuals where there is a predicate PHRA claim. *Dickinson v. Millersville Univ. of Pennsylvania*, No. CIV.A. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. Apr. 3, 2014) (citing *Burgess-Walls v. Brown*, No. 11-275, 2011 WL 3702458, at *10 (E.D. Pa. Aug. 15, 2006)). Because summary

judgment will be granted for PHA on all Scruggs' PHRA claims, there can be no aiding and abetting liability imposed on individual defendants.

**IV.**   **CONCLUSION**

For the reasons set forth above, all defendants are entitled to summary judgment on each of Scruggs' claims, including her Title VII and PHRA disparate treatment, hostile work environment quid pro quo, and "cat's paw" liability gender discrimination claims, and as to her Title VII and PHRA retaliation claims. None of Scruggs' claims will proceed. An appropriate order follows.

s/ANITA B. BRODY
_____
ANITA B. BRODY, J.